UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No.: 09-03491 |
| MNM PROPERTIES, LLC, | ) | Honorable Carol A. Doyle, Chief Judge |
| | ) | **Hearing Date:** March 24, 2009 |
| Debtor. | ) | **Hearing Time:** 10:30 a.m. |

**NOTICE OF ENTRY OF**
**AGREED CASH COLLATERAL ORDER AND CONTINUED MOTION**

To: See Attached Service List

PLEASE TAKE NOTICE that on March 4, 2009 the Court presiding over the captioned Chapter 11 Case entered the attached "Agreed Interim Order Authorizing Use of Cash Collateral." On March 24, 2009, at 10:30 a.m. (the "Hearing"), or as soon thereafter as counsel may be heard, I shall appear before the Honorable Carol A. Doyle, Chief Judge, in Courtroom 742 in the United States Bankruptcy Court, Northern District of Illinois, Eastern Division, Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, Illinois, 60604 and shall then and there present a continued Motion for Entry of Interim Order Authorizing Use of Cash Collateral [Doc. 16] filed herein by the debtor, MNM Properties, LLC ("Debtor"), a copy of which previously was served and may be viewed electronically on PACER as Doc. 16. On or before March 17, 2009 the undersigned will circulate to all creditors and other parties in interest the proposed Agreed Final Order Authorizing Use of Cash Collateral ("Final Order") which the Debtor will ask the Court to enter following the Hearing.

/s/ Chester H. Foster, Jr.
One of the Attorneys for MNM Properties, LLC

Chester H. Foster, Jr. , ARDC No. 03122632
Foster, Kallen & Smith
3825 W. 192nd St
Homewood, IL
(708) 799-6300
chf@fosterkallen.com

RECEIVED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
MAR 11 2009
KENNETH S. GARDNER, CLERK
PUBLIC SERVICE COUNTER

**PROOF OF SERVICE**

I, Chester H. Foster, Jr., an attorney, hereby certify that I served a copy of this notice and the attached motion in the following fashion and on the following parties:

By electronic mail service pursuant to the Court's CM/ECF system, on the following counsel, on March 6, 2009:

**William T Neary**
Office of the U.S. Trustee, Region 11
219 S Dearborn St, Room 873
Chicago, IL 60604
USTPRegion11.ES.ECF@usdoj.gov

**Jeffrey M. Monberg**
**C. Daniel Motsinger**
KRIEG DeVAULT LLP
33 N. LaSalle Street, Suite 2412
Chicago, IL 60602
219/227-6100
219/227-6111
jmonberg@kdlegal.com
cmotsinger@kdlegal.com

By U.S. mail with proper postage prepaid and addressed to the following counsel or parties, on March 6, 2009:

**MNM Properties, LLC**
19 S. LaSalle St.,
Suite 1300
Chicago, IL 60603-1406

**Lake County Treasurer.**
2293 North Main Street
Crown Point, IN 46307-1854

**Indiana American Water**
P.O. Box 578
Alton, IL 62002-0578

**U.S. Bankruptcy Court**
Eastern Division
219 S Dearborn, 7th Floor
Chicago, IL 60604-1702

**Orkin Pest Control**
2640 E. 84th Pl
Merrillville, IN 46410

**Woodbury Property Management**
2921 Garfield Ave
Highland, IN 46322-1641

**Kane County Treasurer**
719 S. Batavia Ave.
Geneva, IL 60134

**Kane Wesson, VP-SAMU**
11IW. Monroe St., 11 W
Chicago, IL 60603

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| In re: | ) Chapter 11 |
|---|---|
| | ) Case No.: 09-03491 |
| MNM PROPERTIES, LLC, | ) Honorable Carol A. Doyle |
| | ) **Hearing Date:** March 3, 2009 |
| Debtor. | ) **Hearing Time:** 10:00 a.m. |

**AGREED INTERIM ORDER AUTHORIZING USE**
**<u>OF CASH COLLATERAL</u>**

This matter came before the Court on the February 26, 2009 "Motion for Entry of Interim Order Authorizing Use of Cash Collateral" (the "Motion") filed by MNM Properties, LLC, as Debtor and Debtor-in-possession ("Debtor"); due notice of the Motion having been given to all entitled thereto; the Court having held a preliminary hearing ("Preliminary Hearing") on the Motion on March 3, 2009, as provided pursuant to Section 363 of the United States Bankruptcy Code (the "Code") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"); secured creditor Harris N.A., successor-by-merger to Mercantile National Bank of Indiana (the "Bank"), having withdrawn its Objection to the Motion at the hearing, and all other objections thereto either having not been filed or made in open Court or having been overruled; and the Court having considered all of the pleadings filed with the Court, all of the testimony, other evidence, and statements of counsel for Debtor and other parties in interest, after due deliberation and consideration and sufficient cause appearing thereof:

The Court, for the purposes of this Order, only FINDS as follows:

1. <u>Filing of Voluntary Petition.</u> On February 4, 2009 (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of the Code and commenced this case (the "Chapter 11 Case"). Pursuant to Sections 1107 and 1108 of the Code, the Debtor has retained

possession of its assets and is authorized thereby, as Debtor-in Possession, to continue the operation and management of its business.

2. Filing of Emergency Motion Prohibiting Use of Case Collateral. On February 11, 2009, the Bank filed its Emergency Motion for Order (1) Prohibiting Use of Case Collateral; (2) Requiring Accounting; and (3) Compelling Sequestration and Turnover of Cash Collateral (the "Emergency Motion"), see [Doc. 10], along with the Declaration of Kay Wesson in Support of Secured Creditor Harris N.A.'s Motion for Order (1) Prohibiting Use of Case Collateral; (2) Requiring Accounting; and (3) Compelling Sequestration and Turnover of Cash Collateral (the "Wesson Decl."). See [Doc. 11].

3. Agreed Order Prohibiting Use of Case Collateral. On February 12, 2009, the Court held a hearing on the Emergency Motion and entered an Agreed Order Prohibiting Use of Cash Collateral and Requiring Segregation and Accounting (the "Agreed Order") [Doc. 12], whereby Debtor (a) was prohibited from using, selling, or leasing the Bank's Cash Collateral (as defined in the Emergency Motion) without the consent of the Bank or the authorization of the Court, and (b) was required to segregate and account for all Cash Collateral in Debtor's possession, custody or control as required by Section 363(c)(4) of the Code.

4. Debtor's Unauthorized Use of the Bank's Cash Collateral. Subsequent to the entry of the Agreed Order, and without the prior consent either of the Court or the Bank, Debtor paid $27,439.02 in expenses attributable to Debtor's properties for the month of February, 2009. A list of the expenses Debtor claims it paid is attached to the Motion as "Exhibit 4." The Court is advised that both Debtor and Woodbury maintain this violation of the Agreed Order was inadvertent and innocent, and the Court accepts this explanation

5. The Bank's Pre-petition Indebtedness and Security. As set forth in the Emergency Motion [Doc. 10] and the Wesson Decl. [Doc. 11], the Bank asserts:

a. claims against Debtor, which as of the Petition Date totaled approximately $14,465,607.00, plus accrued interest, legal fees, expenses and costs;

b. that its claims are secured by first mortgages (collectively, the "Mortgages") upon eleven (11) properties owned by the Debtor (the "Real Estate"); and

c. that its claims further are secured by liens upon, among other things, all of the rental revenue and receipts generated by the Real Estate by operation of the Assignments of Leases and Rents (as defined in the Wesson Decl.) (the Mortgages and the Assignments of Leases and Rents collectively are referred to hereinafter as the "Pre-Petition Liens;" true, correct, and authentic copies of the Pre-Petition Liens are attached to the Wesson Decl. and incorporated therein).

6. Notice. Notice of the hearing on the Motion has been served on all parties requesting notice in this case and as required by Section 363 of the Code and Bankruptcy Rules 2002, 4001 and 9014 and any other applicable law. Upon entry of this Interim Order, Debtor shall serve a copy on the twenty largest unsecured creditors with notice of the continued hearing.

7. Cause. Debtor is using the protections of Chapter 11 in order to try to maintain a going concern and to effect reorganization through a confirmed plan of reorganization. Toward that end, Debtor believes it is essential that its business continues to operate with as little disruption as may possible under the circumstances in order to preserve the business as a going concern and to maximize the value thereof. Debtor's principal source of funding for operations presently consists of rental revenue and receipts generated in the ordinary course of Debtor's

operations prior to and since the Petition Date (the "Rents"); and Debtor acknowledges that the collections and cash received by Debtor from the Rents constitute Cash Collateral in which the Bank has an interest pursuant to Section 363(a) of the Code. As set forth on the budget attached to the Motion as Exhibit A (the "Budget"), in February, 2009, after the commencement of Debtor's Chapter 11 Case[1], the Real Estate generated $89,300 in total Rents. Debtor projects that the Real Estate will generate approximately $133,198.66 in March, 2009, and each month thereafter[2]. Debtor wishes to use the Cash Collateral to meet its monthly expenses pursuant to the Budget. If Debtor is not able to use Cash Collateral for those specific expenses identified in the Budget and this Order as provided herein, it will be unable to pay those expenses that must be paid in the ordinary course of its business in order to continue operations and avoid disruptions. Such expenses include, without limitation, those for utilities, maintenance, repairs, property management, debt service, taxes, and insurance needed to keep Debtor's business operating as specifically identified on the Budget and in this Order. Accordingly, entry of this Order will avoid immediate and irreparable harm to, and is in the best interest of, Debtor, its creditors and its estate. In order for Debtor to continue its operation as Debtor-in-possession and to preserve the going concern value of Debtor, it is essential that Debtor be permitted to use the Cash Collateral for the limited purpose provided in this Order.

8. Interim Stipulation for the Use of Cash Collateral. The Bank is willing to consent to Debtor's continued use of Cash Collateral on an interim basis only on the terms and conditions set forth in this Order, and based on the following acknowledgements and agreements of Debtor:

[1] Certain February rents were received prior to the commencement of the Case.

[2] The Court notes the Debtor expresses reservations regarding its ability to collect all of the rent it is due for March, 2009, and subsequent months.

a. Debtor acknowledges and agrees that (i) it is indebted to the Bank pursuant to the Loan Documents in the approximate principal amount of $14,465,607.00, plus accrued interest, unpaid fees and charges and unpaid reimbursable amounts ("Pre-Petition Indebtedness"); (ii) the Bank has properly perfected its first priority liens and security interests (the "Pre-Petition Liens") in the Real Estate and the Rents (sometimes referred to hereinafter collectively as the "Pre-Petition Collateral"); and (c) the Pre-Petition Liens constitute valid, enforceable, duly-perfected, first-priority liens upon and security interests in the Pre-Petition Collateral, and to the best of Debtor's information and knowledge, the Pre-Petition Liens are not avoidable by Debtor under the provisions of the Code or applicable nonbankruptcy law. Debtor further acknowledges and agrees that within twenty (20) days following the entry of this Order it will reconcile with the Bank any differences between the amount of the asserted Pre-Petition Indebtedness and the actual amount of the Pre-Petition Indebtedness, and such reconciled amount shall be deemed to be the amount of the Pre-Petition Indebtedness pursuant to this Order. Debtor and the Bank acknowledge and agree that all parties in interest other than the Debtor have seventy-five (75) days from the entry of this Order to investigate the foregoing.

b. Debtor acknowledges and agrees that any and all cash, checks, negotiable instruments, securities, documents of title, deposit accounts, proceeds, products or profits of property, receivables and other cash equivalents obtained by Debtor from all of its operations or which are proceeds of any interest in the Pre-Petition Collateral, constitute "cash collateral" of the Bank within the meaning of Section 363(a) of the Code (the "Pre-Petition Cash Collateral"). The Pre-Petition Liens extend to, and the Pre-Petition Indebtedness is secured by, the Pre-Petition Cash Collateral pursuant to Section 552(b) of

the Code. Debtor acknowledges and agrees that until entry of a subsequent order of this Court, it shall not use any more of the Pre-Petition Cash Collateral for any purpose other than specific expenses identified on the Interim Budget (as hereinafter defined) attached hereto as Exhibit A and in accordance with the terms of this Order. Debtor acknowledges and agrees that in connection with obtaining any other Interim Order or any Final Order with respect to the use of any Cash Collateral, such further Interim or Final Order shall (i) contain provisions to address the outstanding request of the Bank to receive distributions of excess Cash Collateral retained by Debtor to the extent that actual collections on the Rents exceed actual expenses of the Debtor, and to authorize Debtor to remit such excess to the Bank to be applied to the Debtor's Pre-Petition Indebtedness without further Court authorization, and (ii) remain subject to the Pre-Petition Liens and the Replacement Lien (as hereinafter defined) provided under this Order.

c. Debtor acknowledges and agrees that any and all cash, checks, negotiable instruments, documents of title, securities, deposit accounts, proceeds, products or profits of property, receivables and other cash equivalents obtained by Debtor from any of its operations or as proceeds of or interest on property upon which the Bank has a lien pursuant to the Loan Documents, whether presently owned or thereafter acquired, received by the Debtor on or after the Petition Date and on or after the relief date, shall constitute "cash collateral" of Bank under Section 363(a) of the Code (collectively, the "Post-Petition Cash Collateral"), and, except to the extent otherwise provided in this Order or any other order of the Court entered upon notice to the Bank and hearing or as consented to by the Bank, shall only be used by the Debtor in accordance with the terms of this Order.

d. Debtor has provided to the Bank a cash flow projection setting forth the amount and sources of gross cash collections and disbursements that the Debtor anticipates will occur during the next four-week-period and which is attached to this Order as Exhibit A (the "Interim Budget"). Thereafter, and for so long as Debtor is authorized by the Court to use Cash Collateral, the Debtor shall continue to submit similar information as contained in the Interim Budget (on a monthly basis to the Bank) prior to commencement of the next month (each a "Subsequent Budget"). The Interim Budget and Subsequent Budgets (collectively the "Budgets") shall be updated as soon as practicable at the end of each month so that they are reconciled with prior Budgets by including a comparison of actual operating collections ("Actual Operating Collections"), actual operating disbursements ("Actual Operating Disbursements"), and actual net cash (Actual Operating Collections minus Actual Operating Disbursements equals "Actual Net Cash") for the Budget Period immediately preceding each four-week-period.

e. The Bank shall have the right:

i. to terminate, at its sole discretion, upon five (5) business days' prior written notice to the Debtor, the Committee, if any, and the United States Trustee (the "Termination Notice"), the Debtor's use of Cash Collateral if:

(a) Debtor commences an action seeking to challenge in whole or in part the priority or enforceability of the Pre-Petition Indebtedness or the validity, priority, perfection or enforceability of the Pre-Petition Liens;

(b) an order is entered appointing a Chapter 11 trustee in this Chapter 11 Case or any related cases;

(c) Debtor submits a Budget which is unacceptable to the

Bank; or

(d) an order is entered dismissing the instant Chapter 11 Case or converting the Chapter 11 Case to a case under Chapter 7 of the Code; and

ii to seek termination of the use of Cash Collateral by motion upon two business days' notice to the Debtor, U.S. Trustee, and all parties requesting notice:

(a) in the event that the Bank believes Debtor has defaulted upon any of the terms or provisions of the foregoing stipulations and has failed to cure such default within two (2) calendar days after receiving written notice of default by Bank; or

(b) in the event that the Bank believes Debtor has defaulted upon any of the terms or provisions of this Order and has failed to cure such default within two (2) calendar days after receiving written notice of default from the Bank.

The occurrence of any of the foregoing events of termination ("Termination Events") shall in no way prejudice, impair or otherwise adversely affect the validity, priority or enforceability of the Pre-Petition Liens or the Post-Petition Liens and, notwithstanding such occurrence, all of the terms and provisions of this Order shall continue in full force and effect, other than Bank's obligation to continue to permit use of Cash Collateral, which shall automatically cease upon the occurrence of a Termination Event. Anything in this paragraph to the contrary notwithstanding, the Bank reserves the right, at any time, to file a motion, upon proper notice, seeking to terminate Debtor's use of Cash Collateral for any reason that the Bank

Case 09-03491 Doc 33 Filed 03/04/09 Entered 03/04/09 14:49:56 Desc Main Document Page 9 of 17

may deem proper cause, including, but not limited to, the failure of the Debtor to pay operational expenses incurred in its Chapter 11 Case or the failure of the Debtor to provide to the Bank adequate protection under Sections 361 and 363 of the Code; provided, however, that Debtor and all other parties in interest shall have the right to oppose such motion.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

A. Definition of Cash Collateral. For purposes of this Order and subject to the reservation of rights contained herein, the term "Cash Collateral" or "cash collateral" shall mean and include all Pre-Petition Cash Collateral, all Post-Petition Cash Collateral and all property of Debtor that constitutes cash collateral in which the Bank asserts an interest as provided in Section 363(a) of the Code, and shall include, without limitation:

1. All cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any property of Debtor in which the Bank asserts a lien or security interest or replacement lien or security interest, whether as part of the Pre-Petition Collateral or other Replacement Collateral (as defined hereinafter) or pursuant to this Order, or any other order of the Court or applicable law or otherwise, and whether such property that has been converted to cash existed as of the Petition Date or arose or was generated thereafter; and

2. All of the deposits and refund claims of Debtor. All of Debtor's cash on hand and cash flow from operations consists of proceeds of Pre-Petition Collateral; therefore, all such cash is Cash Collateral.

B. Use of Cash Collateral.

1. Subject to the terms and conditions set forth below, and except as the Bank otherwise consents or the Court orders otherwise over the objection of the Bank

after notice and hearing, Debtor is authorized to use Cash Collateral on an interim basis and only in the ordinary course of its business, subject to further order of the Court, during the period beginning on the date hereof through final hearing on the Motion, and only for the purposes and in accordance with the Budget, Exhibit A to this Order, up to the monthly cumulative amounts set forth in the Budget[3].

2. The rights and obligations of Debtor and the Bank with respect to all transactions and the use of Cash Collateral that have occurred prior to any termination of Debtor's authority to use Cash Collateral hereunder shall survive such termination.

C. Replacement Lien. As protection of the interest of the Bank in the Cash Collateral and Pre-Petition Collateral (the Cash Collateral and the Pre-Petition Collateral are hereinafter collectively referred to as the "Collateral"), but not necessarily adequate protection within the meaning of Sections 361 and 363 of the Code, for Debtor's use of Collateral and the potential diminution in value thereof, and the imposition of the automatic stay, the Bank, to the same and fullest extent and in the same priority that the Bank had a valid security interest in the Pre-Petition Collateral, is hereby granted, as additional security for the Pre-Petition Indebtedness, replacement security interests in and a lien upon all of Debtor's property and assets, of any kind or nature whatsoever, whether now owned or hereafter acquired by the Debtor including, but not limited to, all assets of Debtor of a like kind included within the definition of Pre-Petition Collateral, and all proceeds, products, rents and/or profits thereof (such collateral, collectively, the "Replacement Collateral," and such replacement security interest and lien, the "Replacement Lien"), including, without limitation, all of the Pre-Petition Collateral. The Replacement Liens

[3] The Court notes the Debtor and the Bank have agreed that if both the Bank and the Debtor consent thereto in a writing signed by both of their respective counsel , the monthly cumulative expense amounts set forth in the Budget may be adjusted without further order of the Court upon the parties' joint filing of the writing with the Court.

shall be enforceable in an amount equal to the aggregate post-petition diminution in the value of the Bank's interest in the Pre-Petition Collateral, as such Collateral existed as of the Petition Date (whether as a result of physical deterioration, consumption, use, shrinkage, decline in market value or otherwise), including, without limitation, the post-petition diminution in value of the Pre-Petition Collateral resulting from Debtor's use of Cash Collateral as provided herein. Without limiting the generality of the foregoing, the Replacement Lien (1) shall be subject only to non-avoidable, valid, enforceable and perfected liens and security interests in the Pre-Petition Collateral and Replacement Collateral of Debtor, as pre-petition Debtor, that existed on the Petition Date, (2) shall at all times be senior to the rights of Debtor, and (3) shall be senior to any security interest in or lien on the Replacement Collateral which is avoided or otherwise preserved for the benefit of Debtor's estate under Section 551 or any other provision of the Code. The terms and provisions of this paragraph shall survive the termination of this Order and shall remain binding on the Debtor, the Bank and on any trustee or other fiduciary subsequently appointed with respect to property of the Debtor's estate.

D. Establishment of Debtor-in-Possession Accounts at Bank. Immediately following the entry of this Order, the Debtor shall establish its Debtor-in-Possession Accounts at the Bank, including all accounts in which any Pre-Petition Cash Collateral is now, or any Post-Petition Cash Collateral Cash Collateral hereinafter shall be, deposited. The Debtor further will establish a Debtor in Possession escrow account with the Bank into which the Debtor shall deposit its monthly escrow for taxes, as set forth in Exhibit A. The Bank will cooperate with the Debtor and the Office of the U.S. Trustee in facilitating the establishment of such Debtor-in-Possession Accounts. The Bank qualifies as an approved depository as contemplated by 11 U.S.C §345.

E. Reservation of Rights. Nothing contained in this Order constitutes a finding or

other determination with respect to the adequacy of the protection of the interest of the Bank in the Pre-Petition Collateral or shall preclude the Bank from seeking additional or different adequate protection (as defined in Section 361 of the Code), and this Order is without prejudice to the right of the Bank to seek to terminate or modify the automatic stay, or the right of Debtor and other parties in interest to oppose such requested relief or to seek further use of Cash Collateral.

F. Perfection of New Liens. The Replacement Liens on the Replacement Collateral granted to the Bank shall be, and hereby are, deemed, valid, enforceable and duly and automatically granted and perfected and recorded under all applicable federal or state or local or other laws, statute, rule or regulation as of the relief date, and no notice, filing, mortgage recordation, possession, further order or other act shall be required to effect such grant or perfection of such Replacement Liens; provided, however, that notwithstanding the provisions of Section 362 of the Code, the Bank may, at its sole option, file or record or cause Debtor to execute, file or record such UCC financing statements, notices of liens and security interest, mortgages, or other similar documents as the Bank may require.

G. Priority Claims. The Bank shall have all of the rights accorded it pursuant to Section 507(b) of the Code in respect of any adequate protection provided herein. In the event, notwithstanding the protection granted to the Bank pursuant to this Order, such protection is inadequate and the Bank has a claim for an administrative expense allowable under Section 507(a)(1) of the Code arising from the use by the Debtor of the Pre-Petition Cash Collateral, the imposition of the automatic stay and the diminution in the value of the Pre-Petition Collateral in which the Bank has an interest, the Bank's administrative expense claims in an amount not to exceed the amount by which the Post-Petition Collateral is less than the Pre-Petition Collateral

shall have priority over all other administrative expenses allowable under the Code pursuant to Section 507(b), except for and to the extent of any and all fees due to the U.S. Trustee.

H. Modification of Automatic Stay. The automatic stay of Section 362 of the Code is hereby modified to the extent necessary to implement the provisions of this Order. The Bank shall be conclusively presumed to have requested adequate protection as of the relief date.

I. Effect of Modification of Order. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity of any rights or claims of the Bank arising hereunder prior to the effective time of such stay, modification or vacatur, or the validity and enforceability of any lien or priority authorized hereby. Notwithstanding any such stay, modification or vacatur, any rights or claims of the Bank arising hereunder prior to the effective time of such modification, stay or vacatur and any lien or priority authorized hereby shall be governed in all respects by the original provisions of this Order, and the Bank shall be entitled to all the rights, privileges and benefits, including, without limitation, the security interests and priorities granted herein, and all rights accorded by Section 507(b) of the Code.

J. Jurisdiction; Core Proceeding; Effectiveness. The subject of this Order is a "core" proceeding with the meaning of 28 U.S.C. § 157. This Court has jurisdiction over this Chapter 11 Case, the parties, and property affected hereby pursuant to 28 U.S.C. § 157 and 1334. This Order is a binding order of the Court and shall be binding upon and inure to the benefit of the Bank, Debtor and their respective successors and assigns (including any successor trustee or estate representative in the Case or any subsequent case or proceeding

under the Code).

K. Final Hearing. A Final Hearing on this Order pursuant to Bankruptcy Rule 4001(b)(2) will be held on **March 24, 2009 at 10:30a.m.** The Debtor shall transmit a notice of the Final Hearing and a copy of the order it proposes to be entered at the Final Hearing to all known parties in interest on or before **March 10, 2009**.

DATED: March 4, 2009.

ENTERED: ______________________
Carol A. Doyle, Chief Judge
United States Bankruptcy Court

AGREED TO:

Harris N.A., successor-by-merger to Mercantile National Bank of Indiana

By: ______________________
C. Daniel Motsinger
Jeffrey M. Monberg
KRIEG DeVAULT LLP
33 N. LaSalle Street, Suite 2412
Chicago, IL 60602
219/227-6100
219/227-6101
cmotsinger@kdlegal.com
jmonberg@kdlegal.com

MNM Properties, LLC

By: ______________________
Chester H. Foster, Jr.
Foster, Kallen & Smith
3825 W 192nd Street
Homewood, IL
chf@fosterkallen.com

KDNW1_1985936_3.DOC

# Exhibit A

REVISED Cash Budget for the Period: 2/4/09 - 3/31/09

Combined MNM Properties

| Acct # | Description | Feb Group | Feb St.Charles | Feb Mich. City | Mar Group | Mar St.Charles | Mar Mich. City | March Total | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 3020 | Base Rent | 41,855 | 8,737 | 24,767 | 71,553 | 25,268 | 24,767 | 121,584.66 | | 121,516.66 |
| 3030 | Less: Rent Credit | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3225 | Storage & Lock Fee | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3230 | Misc. Monthly Charge | 2,426 | 0 | 0 | 2,426 | 0 | 0 | 2,426.00 | | |
| 3310 | Late Fee | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3320 | NSF Charge | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| | Reserve for Uncollected Rent @ 20% | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| | Total Rental Revenue | 44,161 | 9,737 | 24,767 | 73,978 | 25,265 | 24,767 | 124,016.66 | | |
| 3610 | Passthru Improvements | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3710 | Passthru Insurance | 0 | 105 | 0 | 18 | 373 | 0 | | | |
| 3720 | Passthru Property Tax | 3,780 | 1,173 | 0 | 3,812 | 3,741 | 0 | | | |
| 3730 | Passthru Utilities | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3740 | Passthru Electricity | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3750 | Passthru Gas | 0 | 0 | 0 | 0 | 0 | 0 | | | |
| 3760 | Estimated CAM Charges | 5,013 | 341 | 0 | 2,142 | 1,133 | 0 | | | |
| | Total Reimbursement Revenue | 8,976 | 1,619 | 0 | 6,363 | 5,247 | 0 | | 11,610.00 | 11,610.00 |
| | TOTAL REVENUE/RECEIPTS | 53,137 | 11,356 | 24,767 | 80,342 | 30,516 | 24,767 | 155,624.66 | 271,243.31 | 11,610.00 |

| Acct # | Description | Feb | Feb | Feb | Mar | Mar | Mar |
|---|---|---|---|---|---|---|---|
| 6110 | Roof Repairs/CAM | 0 | 0 | 0 | 0 | 0 | 0 |
| 6115 | Exterior Repairs/Mtc | 0 | 0 | 0 | 0 | 0 | 0 |
| 6125 | Electrical Repairs/Mtc | 0 | 0 | 0 | 0 | 450 | 0 |
| 6130 | Plumbing Repairs/Mtc | 2,331 | 0 | 0 | 506 | 0 | 0 |
| 6140 | HVAC Supplies/Repairs | 0 | 0 | 0 | 0 | 0 | 0 |
| 6165 | Fire/Life Safety Contract | 0 | 0 | 0 | | 0 | 0 |
| 6210 | Janitorial Service | 0 | 0 | 0 | 0 | 175 | 0 |
| | Total Building Repairs & Mtc. | 2,331 | 0 | 0 | 680 | 625 | 0 |
| 6310 | Electricity-CAM | 0 | 0 | 0 | 0 | 425 | 0 |
| 6315 | Gas-CAM | 0 | 0 | 0 | | 250 | 0 |
| 6320 | Water/Sewer-CAM | 93 | 0 | 0 | 802 | 130 | 0 |
| | Total Utilities | 93 | 0 | 0 | 802 | 805 | 0 |
| 6425 | Exterior Landscape Supplies/Rprs | 0 | 0 | 0 | 0 | 0 | 0 |
| 6435 | Snow Removal | 7,030 | 0 | 0 | 5,150 | 5,803 | 0 |

# Exhibit A

| Acct # | Description | Feb | Feb | Feb | Mar | Mar | Mar | |
|---|---|---|---|---|---|---|---|---|
| 6440 | Pest Control | 53 | 0 | 0 | 65 | 0 | 0 | |
| 6445 | Parking Facilities | 1 | 0 | 0 | 0 | 0 | 0 | |
| 6450 | Common Area Facilities | 435 | 0 | 0 | 400 | 0 | 0 | |
| 6455 | Trash Removal | 381 | 0 | 0 | 507 | 480 | 0 | |
| | Total Common Area Repairs & Mtc. | 3,309 | 0 | 0 | 6,617 | 5,480 | 0 | |
| 6525 | Misc. General/Administrative | 0 | 0 | 0 | 0 | 0 | 0 | |
| 6530 | Property Management Fee | 1 728 | 525 | 495 | 1,994 | 610 | 485 | |
| | Total General & Administrative | 1,721 | 523 | 495 | 1,994 | 610 | 495 | |
| 6610 | Property Taxes | 0 | 0 | 0 | 12,840 | 8,327 | 0 | |
| | Total Taxes | 0 | 0 | 0 | 12,840 | 8,327 | 0 | |
| 6665 | Liability Insurance | 2,675 | 0 | 0 | 2 675 | 0 | 0 | |
| | Total Insurance | 2,675 | 0 | 0 | 1,876 | 0 | 0 | |
| | TOTAL OPERATING EXPENSES | 15,642 | 823 | 495 | 24,728 | 16,847 | 485 | 41,171.02 |
| | NET OPERATING INCOME | 37,636 | 10,833 | 24,271 | 55,614 | 14,468 | 24,271 | 94,353.44 |
| 7210 | Electricity-Owner | 1,135 | 0 | 0 | 1,200 | 0 | 0 | |
| 7215 | Electricity-Vacant | 1,132 | 0 | 0 | 900 | 75 | 0 | |
| 7220 | Gas-Owner | 636 | 0 | | 750 | | | |
| 7225 | Gas-Vacant | 960 | 0 | 0 | 485 | 200 | 0 | |
| 7235 | Water-Vacant | 0 | 0 | 0 | | 30 | 0 | |
| 7240 | Legal and Audit Fees | 0 | 0 | 0 | 0 | 0 | 0 | |
| 7245 | HVAC Repairs-Owner | 0 | 6,580 | 0 | 350 | 0 | 0 | |
| 7265 | Cleaning Service-Owner | 0 | 0 | | 855 | | | |
| 7270 | Leasing Promotion Expense | 6 | 0 | 0 | 0 | 0 | 0 | |
| 7275 | Misc Disbursements | 75 | 0 | | 150 | | | |
| | Total Owner Building Expense | 4,166 | 6,580 | 0 | 6,590 | 535 | 0 | 6,886.50 |
| 7350 | Tenant Improvements | 0 | 0 | 0 | 0 | 0 | 0 | |
| 7355 | Construction Management Fees | 0 | 0 | 0 | 0 | 0 | 0 | |
| 7360 | Lease Commissions | 0 | 0 | 0 | 0 | 0 | 0 | |
| | Total Capital Expense | 0 | 0 | 0 | 0 | 0 | 0 | 0.00 |
| | TOTAL REVENUE/RECEIPTS | 53,177 | 11,356 | 24,767 | 80,342 | 30,516 | 24,767 | 135,624.66 |
| | TOTAL EXPENSES | 19,711 | 7,103 | 495 | 31,304 | 16,361 | 486 | 47,156.22 |
| | NET INCOME | 33,466 | 4,253 | 24,271 | 51,034 | 14,164 | 24,271 | 88,468.14 |

# Exhibit A

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 6610 | Property Taxes | 12,840 | 8,023 | [illegible] | 0 | 0 | 0 | |
| 8110 | Debt Expense | 53,369 | 32,904 | 16,183 | 53,809 | 32,884 | 16,185 | |
| | Total Debt Service | 61,309 | 32,914 | 16,188 | 53,809 | 32,904 | 55,186 | 162,961.46 |
| 8303 | Bank Service Fees | 0 | 0 | [illegible] | 8 | 0 | 0 | |
| | Total Special Accounts | 0 | 0 | [illegible] | 1 | 0 | 0 | |
| | NET INCOME | 31,467 | 4,253 | 16,184 | 50,834 | 14,164 | 24,271 | 88,869.44 |
| | Accrued Debt Service | 53,309 | 32,904 | 16,144 | 53,808 | 32,904 | 16,186 | |
| | NET ACCRUED PROFIT/LOSS | (20,342) | (28,651) | 1,043 | (3,775) | (14,740) | 8,085 | [illegible] |